Okay, Blanca, I think we are ready to begin. Good morning. The United States Court of Appeals for the Ninth Circuit is now in session. Good morning, everyone. Once again, I'd like to thank Judge Boo from the Western District of Missouri for sitting with us and helping us out this week. We very much appreciate it and to having the opportunity to get to know you. We're going to take big pieces up in the order in which they appear on the docket. We have previously submitted IB Solutions v. Empire Health Choice Assurance, Wheeler v. County of Orange, and Alaska v. Garland. So, we will start with U.S. v. Park. Council? Ms. Freedman? Good morning, Your Honors. May it please the Court that I am representing Yu Park, and I'm going to try to watch my time and reserve two minutes of it for rebuttal. Your Honors, I'd like to start by highlighting that the search condition at issue here authorized suspicionless, not just warrantless searches. And I think this difference is really important because, as the Supreme Court in Griffin explained, you can see how requiring officers to take the time and effort involved in establishing probable cause or seeking out a warrant could, I think the words the Court used were, appreciably interfere with the state's ability to supervise a releasee. But the Griffin Court didn't seem to think the same was true of the reasonable grounds requirement in the regulation or condition at issue there. And I think this makes a lot of sense. You know, reasonable suspicion assessments are often done on the ground by officers very quickly. They don't really involve a lot of process or investigation. You know, in my experience, it's often based on an officer's observation in combination with their training and experience. So it follows from this that a reasonable suspicion requirement shouldn't actually substantially interfere with the government's ability to supervise a federal releasee. But on Mr. Park's side of the balance, you know, when he's facing a suspicionless search condition of his phone, I think that could greatly impede with his ability to reintegrate into his community. Ms. Marti, can I separate your argument into two parts for a moment? Sure. You've got the Fourth Amendment argument, and you've got what I would call a statutory argument, which is to say, in this case, there's not a sufficient nexus. Focusing only on the Fourth Amendment argument for a moment, whether this condition violates the Fourth Amendment, and if we were writing on a clean slate, I'd be very sympathetic to your position. I'm trying to figure out where your case falls on the continuum that seems to have been set up. And as I understand our case law, if it's a parole condition, you can have a suspicionless condition. If it's a probation condition, you can't. If it's a condition of mandatory supervision in that case, where does supervised release fall on that continuum? Your Honor, I actually think supervised release is sort of its own animal. You know, separate from California probation, California parole, and the California mandatory supervision, that was at issue in Cervantes. I agree it's its own animal, but tell me why it's closer to probation, if you will, than to mandatory supervision. Well, I actually think, you know, supervised release, and I think, you know, I briefed this, you know, at length, is, you know, very different in the sense that, you know, supervised releases actually are sort of a broad population of criminal defendants here. You know, I think the latest statistics on parolees and probationers are something parole is granted to only like 16% of the eligible California state prison population, and that's only 20% of the entire California state population. So this is a huge amount of criminal defendants, and they really range on the scale here of the severity of the cases, and every single federal defendant, as long as it's a Class A misdemeanor or above, you know, usually gets a term of supervised release or term of supervision at the end of their criminal sentence, and that's sort of another distinction. You know, this comes at the end of their criminal sentence. You know, they've served... Well, what about mandatory supervision? So the mandatory state supervision... Our cases say mandatory supervision is the equivalent of parole. It struck me that supervised release is a lot like mandatory supervision. Tell me how it's different. Well, so actually, the mandatory state supervision at issue in Cervantes was very different. So this is, you know, an animal of the California law where a court sentences a defendant to a total term of incarceration and then agrees to split that sentence so that they can serve the tail end of that term on, you know, release, and that's why, you know, the court in Cervantes really saw that that mandatory state supervision term was more similar to parole. And I'd like to add that the language, the reason why it's called a mandatory state supervision, the mandatory aspect of that isn't, you know, the same thing as, you know, how supervised release is mandated at the end of every federal prison term. The mandatory aspect of that is because California defendants who receive this kind of term have to complete their parole term. They can't access early termination. They can't go to the courts and find a way to cut that short, and that's because it's intended entirely to replace the tail end of their incarceration term that was imposed in that case. So I think it's a really different animal than supervised release, you know, where you can go to the courts and seek early termination. It really is not intended to replace a period of incarceration in the same way that the mandatory state supervision term at Cervantes did. And I mean, I think the courts now... Can I ask you one other question on this point? I've been trying to find cases from around the country with not much success. Has this issue come up anywhere else before? Not from my reading of the case law. You know, I haven't found a specific case that addresses the issue of, you know, a completely suspicionless search condition imposed on a federal supervised releasee, you know, that goes to their cell phones. And, you know, I also want to talk a little bit... Aren't there some cases that uphold completely suspicionless conditions on supervised releasees, even if they don't specifically mention the cell phone? Yes, but again, I think a home is very different from a cell phone. And that was sort of what I wanted to address earlier about how a suspicionless search condition could really affect Mr. Park's ability to reintegrate into his community. You know, even more so than when Riley was decided cell phones are our entire lifeline. I mean, people date on these phones, you know, they access health care on their phones, they engage in politics on their phones, you know, they communicate with their loved one and their partners on their phones. You know, so if you knew that this kind of deeply private information was searchable by law enforcement at any time, even if you weren't doing anything wrong, you know, it would really have kind of a chilling effect on your desire to sort of download that dating app or seek out that medical advice or engage in politics and with your community in the same way. But if you knew that law enforcement couldn't just look at your phone as long as you weren't doing anything wrong, you know, I think that has a far less chilling effect. So I think the fact that this is a cell phone is actually really important and really tips that balance, you know, in favor of Mr. Park. Ms. Maté, I'd like to ask you about the nexus part. At least here in the Western District of Missouri, we allow suspicionless searches of cell phones for people who've engaged in And that's something I believe that there's a close nexus to, to allow that search. Was there any finding of any type of nexus here? And how would that affect you or what you believe the outcome should be? You know, there wasn't any sort of finding nexus. I think the court justified the imposition of search condition by arguing that it was worried about guns and the neighbors that were involved in the fictitious dash house robbery at issue in this case. And it didn't really establish a nexus between cell phones or electronic devices specifically, and, you know, the need to impose this condition. So, you know, you know, that again, cuts again in favor of Mr. Park and, you know, my request to vacate this condition. I don't think there was a direct nexus to a cell phone use. I mean, I think the government has offered this nexus, you know, in replacement to what the court should have, you know, reasoned at that time, which is that, you know, there was a few text messages and he had a burner cell incident. But again, I think the D.C. circuit in Burroughs and this court in Lara actually really answered that question by saying, you know, the ubiquity of cell phones and the way that they're used means that it's kind of impossible that you're going to find a criminal defendant who hasn't really used a cell phone at some point during the commission of their offense. So I think the government and the court really needed to do quite a bit more than that. Their cell phone was used to just communicate, you know, during the commission of this offense than they did. What do you seek? What do you seek in your way of relief on this second point? Should we remand to the district court to tell it that it can't impose the condition without making a nexus funding? Or are you seeking that we simply strike the condition? Yeah, I think I'm seeking that you simply strike the condition because I don't think it is adequately justifiable on this record. Well, but the district court, I mean, my difficulty here is I'm not sure the district court justified it except by saying public safety. And shouldn't we allow the district judge in the first instance to make that determination? Except that we did here, you know, counsel adequately objected to this condition, you know, during the resentencing and said that it went too far. And, you know, the district court, this was the district court justification in that context. So I think at this point, given this record and what's available here, I think this court, you know, is amply able to strike this condition. And so is there any record of police harassment of your client by misusing this right of suspicionless search? As of now, to date, you mean since he's been on supervised release? He's only been on supervised release for a few months at this point, your honor. And I don't I have no information pertaining to whether or not he's been harassed. And what do we make of the fact that the court invited him to come back to change, you know, to ask that the condition be changed? I mean, I don't think that cures the constitutional problem involved. And, you know, I'd like to also point out that I've done a deep dive into California law where, you know, they also the California parole condition that was at issue in Sampson also said, you know, it's subject to it was limited by whether or not those searches were arbitrary and harassing. And there hasn't been a single California case to have found, you know, a search to be arbitrary or harassing. So I tend to think of this as sort of a right without a remedy. Well, but we're not under California law. We're dealing with federal court. And I guess I guess the question is only on the statutory side, if the condition is unconstitutional on its face, it's unconstitutional on its face. But if you're saying on the statutory side, gee, it may be may get overused. And the judge says, come back if you're ever worried. Does that have any, you know, should we take up now whether it might be overused? Again, I don't think that that necessarily even resolves the problem, the statutory problem of having to like, you know, having to have this condition, you know, narrowly deprivation of liberty possible by allowing them to come back into court every single time they experience an act of harassment. It doesn't really solve the original problem with imposing it in this way. And I apologize for taking you over. If Judge Ward will let me just ask one other question here. It's that all these cases seem to arise in the context of an actual search. And that's what makes me and I think what may have prompted others to ask the question. When we confront an actual search, we're able to figure out whether there is a nexus and whether or not you're the defendant's rights have been unduly restricted. Here, we're looking at a condition without any consequence yet that's arisen from it. And that's why I asked the question. I think in that context, you know, judges have to craft these conditions based on all of the available information that they have at that time. So it is sort of backwards looking. You have to look at a defendant's criminal history. You know, at the time of this resentencing, we also have the fact that Mr. Park had spent a decade in prison without any incident as well and had had no prior contact in the criminal justice system. I mean, the recidivism rates for offenders like Mr. Park are, I think, 25 percent, you know, as opposed to the 70 percent that was, you know, at issue in Sampson for California parolees. So I do think that you have to craft these kinds of conditions with all of those facts in mind. So, I mean, it's true that most of the case law, you know, is, you know, analyzing searches that happen after the fact. And so you have more information there. But there was a lot of information here for the district court to establish a factual nexus. And with that, Your Honors, I think I'd like to submit and hopefully reserve some time for rebuttal. Thank you, counsel. Mr. Friedman. Good morning, Your Honors. David Friedman of the United States. May it please the court. I'd like to start by addressing the question of where on the spectrum of privacy rights people on supressed release fall. As Judge Hurdle has noted, this panel is not writing on a clean slate with respect to this issue. This court has repeatedly held that defendants on supressed release have the same diminished privacy rights as those on parole. And that's a holding this court reached in Beth's and the Bair decision and also the recent Dixon decision. I don't believe the defendant has to justify any of that. I thought in Lara we decided that it was more akin to probation. Lara, I believe, was a case that involved someone on probation that actually was a probation search case. And that is why this court decided to apply the reasoning of Riley and held that it was different from Johnson and Corti and other cases where this court was dealing with parolees. And I think ultimately there's actually no need to analogize between parole or supressed release. This court directly confronted the question of, you know, what is the appropriate standard for suspicionless search condition of an electronic device? And this court held that when someone's on supressed release, it's not an abuse of discretion for a district court to impose that type of condition as long as there's a nexus with one of the goals of supressed release. And in reaching that decision, the court specifically rejected the defendant's argument that the reasoning of Riley v. someone on supressed release, they're still serving their sentence. So they have those diminished privacy rights. So I do think the key question for the court is whether there was a nexus in this case with one of the goals of supressed release. The district court found that nexus at ER 46 and 47. He said the condition was justified by his ongoing concern about public safety. And he made that finding after a very detailed resentencing proceeding. It was two days. There was two different hearings, hours of argument, lots of lots of briefing. And based on that, help me, Edward, a trial judge is always concerned about public safety. That's one of those kind of classic 3553A factors. Don't we have to do more than say just public safety? Don't we have to actually tie the defendant's conduct to the condition? And in this case, a suspicionless search of a cell phone? Well, your honor, I think if you look at the record, which this court is entitled to do with the supressed release condition over the course of these these two days of the hearing, the district court repeatedly mentioned how this was a particularly serious offense. It involves dangerous weapons. It involved military military style gear, body armor and the defendant's words that he was ready and sort of willing to kill people if need be. And given that concern and particularly that this report was reducing the defendant's sentence from 30 years to 15 years. And this is something he explicitly said at page one of four of the excerpts of record. He wanted to impose this condition because the defendant's getting out earlier. He has this concern. And I think ultimately, the district court wanted to make sure that the probation office had the best chance of detecting any criminality if if the defendant ended up committing a similar crime in the future. And this is the type of crime that is typically committed using a cell phone. And it's you know, it's an interstate conspiracy, a sort of a robbery crew. And in this case, it in fact did involve cell phone usage. The offense was was planned using cell phones. And the defendant calls it just a few text messages. But if you look at the record, they were texting about buying body armor, about traveling to California to commit the crime. And at the meeting before the robbery with undercover agents, the defendant said they needed they needed to buy throwaway phones so they could communicate on the day of the robbery. So I think it was.  But the district court, all the district court said was public safety, which I assume could be offered as a justification for any condition of supervised release. The district court might have a much better reason or a more detailed reason than that. But what why shouldn't we? I guess it's a question I asked your colleague at the end. She wants us to just throw it out. My question is, why shouldn't we just send this back to the district court and say we need a little bit better reasoning than simply public safety? Tell us. Tell us what the nexus here is. Well, your honor, I think there says you just have to make that factual finding. There's a nexus with a goal of supervised release. And we have that finding here. And in the supervised release context, this court has noted that you can look at the you can look at the entirety of the record to sort of infer the explanation. There's no requirement that the district court sort of lay it out in detail for each condition. I think the cases are slightly different there, and that's why I'm pushing back a little. I understand the judge doesn't have to give an incredibly detailed explanation. We can look back and see whether the explanation he gives is supported by the record. But when the explanation is sort of as nebulous and applicable to all cases as public safety, shouldn't we require something a little bit more? I don't think this was a case where there was just a generic indication of public safety. If you look at the transcript of both days of the resentencing, the court repeatedly mentioned how worried he was about how serious this offense was. He clearly thought it was particularly serious. And even even on the resentencing, the guideline range was only 63 to 78 months. He gave a far above guideline sentence of 180 months because he clearly thought it was a serious offense. He was worried that the defendants were not changed men as they said they were. So I think you can you can see from the entirety of the record, he wanted to make sure the probation office would have the best chance of catching the defendant if he engaged in this type of conduct again. And I think you can compare this case to the decision in Bayer. In that case, there was no nexus at all with with cell phone usage. It didn't involve cell phone usage at all. This case does involve cell phone usage. In that case, the district court basically said, well, this is the type of offense that could be committed, you know, using using using computers in the future. Let me read you from Bayer. The district court there says, I see a nexus because there was a commercial context to what he was doing that goes directly to the offense in possession. And so the court tried at least to link up the search of computers and cell phones to this condition in some way. And the judge may well have been able to do that in this case, too. I take your point that there are things in the record that suggest that cell phones may have been used in the course of this crime. But the judge didn't say it. That's my concern. I understand this condition. It isn't just cell phones. It's everything is subject to suspicionless search around this person. I realize that's not part of the argument, but it says defendant shall submit his person and property, including any residence premises, vehicle, container, papers, effects, computers or other electronic communication or digital storage devices or media under his control to suspicionless searches. It just seems very overbroad. Well, Your Honor, I think this court approved similar conditions in Betz and in Bayer. And, you know, ultimately, I think that the reason the condition is so broad is the judge had such concern about public safety. I would also just add the defendant didn't object below to the detail, to the procedurally to the condition not being explained enough. That's not an objection the defendant made. The defendant did object that the condition should substantively contain a reasonable suspicion requirement. So I think if the question is whether the explanation was detailed enough to justify a cell phone condition or a broader condition, that that should be reviewed for plain error. And I don't think. How does this, how would this work in practice? Does this condition mean if the police sees Mr. Park, they can just immediately search him for anything? He's just sitting there doing nothing. Well, the police would have to actually know about the condition. That's, of course, something that this court always imposes in these cases. So if it was a random police encounter, they might not know about the condition. I would also add there are always reasonable requirements on the manner and execution of the search. And in this particular case, the district judge said, if you have an issue with harassment, come back and tell me. And that's actually in the judgment. And at this point, I think as Judge Hurdle has noted, the defendant has been on release for at least a few months now. There's been no evidence of harassment. And if he feels the condition is being overused, he feels it's not being executed properly, he can come back to the court and raise those concerns. And in addition, with respect to a particular search, of course, Judge Hurdle has also noted, this court can review a particular search for reasonableness. So at this point, I think the only question... Can we, if there's a blanket consent, would we review this? Or wouldn't we just say he's consented to the search in his condition? I think in these cases... Well, I assume if we had one of those cases, you'd be here saying to us, you don't need to go through the search, he consented to it. Well, he objected to it in this case. I don't think there's that sort of consent dynamic here. And if you look at Knight, Sampson, Cervantes, I think this court and the Supreme Court always engages in some sort of balancing, even if there is a condition. Of course, we would argue the condition has diminished his privacy rights. But I don't think it would be an automatic affirmance in that case. And, you know, again, ultimately, I think the question is, is there a nexus? And I think there is, given the serious nature of defense and the cell phone usage. So I see him at my time. If there's any other questions, I'm happy to answer them. But otherwise, we'll submit on our brief. Thank you. Thank you very much. U.S. versus Park will be submitted. We will take up Aliq versus Verbin.
judges: WARDLAW, HURWITZ, Bough